IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| ADAM OLSON<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF NORTH LIBERTY, DIANE VENENGA, individually, CHRISTOPHER SHINE, individually, and TYSON LANDSGARD, individually<br><br>Defendants. | No. 3:18-CV-00102<br><br>**PLAINTIFF'S TRIAL BRIEF** |

**FACTUAL BACKGROUND**

Adam Olson had worked as a police officer for the City of North Liberty for 15 years. He had worked with all of the individual Defendants for over 10 years. He and Sergeant Chris Shine were friends and lived in the same small town of Marengo, Iowa. If he needed to vent about work frustrations, Olson would confide in Shine. On July 13, 2018, Shine decided to report Olson. Lieutenant Tyson Landsgard had failed to perform one of his work obligations, and Olson made a comment about it. Shine reported this directly to Landsgard on July 14th, 2018. Olson was given a written reprimand as a result of Shine's report. Shortly thereafter, Olson was placed on administrative leave after the July 14th felony traffic stop investigation began.

The evening before the Due Process Hearing for the felony traffic stop was set to occur, the individual Defendants, beginning with Shine, began reporting that Olson had "lost it," "had gone off the deep end" and was on medication for "symptoms of persons not being in touch with reality." Shine's report was solely based on conversations he had

1

with his wife Tiffany Shine, and two alleged instances of Olson driving by Sergeant Shine's house in the past week.  Sergeant Shine reported this to Lieutenant Landsgard. When talking to Lieut. Landsgard, Shine alleged that his wife Tiffany had told him that Jennifer Olson, Olson's wife, had relayed the information to her that day.  Shine did **not** tell Lieut. Landsgard that Olson posed a physical threat.  Lieut. Landsgard then called Chief Diane Venenga and relied Shine's information, but additionally told Chief Venenga that Olson posed a danger to the Chief as well as to the Lieutenant specifically.  Lieut. Landsgard, in Shine's opinion, "twisted" Shine's report into something it was not—something more sinister.  Venenga and Landsgard discussed how to keep themselves safe during the hearing the next day.  None of these experienced officers, however, took any steps to contact Olson or his family members to see if Shine's concerns were justified.  None of the officers took any steps to determine Olson's whereabouts, despite their alleged fear that he posed a danger to them.  Instead, Chief Venenga reported these completely unfounded concerns to the City Administrator Ryan Heiar, who in turn reported it to the Mayor of North Liberty.

Chief Venenga would later claim that on the night of the 12th she had called the Marengo police department to request a "wellness check" on the Olson household, but that she did not leave her name or request that the Marengo Police call her back to confirm the status or whereabouts of the Olsons.  Discovery revealed that Chief Venenga gave false testimony regarding her actions on September 12.  Her phone records establish that she did not call the Marengo Police Department from her cell phone that night.

As a result of the individual Defendants' failure to do a single iota of police work (despite all being police officers), the extent of their "evidence" on which they based their defamatory statements amounted to this:  one man reported that his wife had heard from

another man's wife that the other wife's husband had "lost it."

As a result of these false allegations, mere hours before the Due Process Hearing, the City decided Olson was not permitted to appear on City property and would be required to appear and defend himself via Skype. The City stated that "when reporting her concerns to another Sergeant's wife, Ms. Olson knew that her concerns would be reported up the chain to the City." The City made it clear that they would not postpone the Due Process hearing, which they insisted proceed "without delay."

Lieut. Landsgard wanted to keep the Olsons from finding out about his defamatory actions. He was upset with the city attorney for disclosing this information and "went off" on her.

On the morning of September 13th, prior to the due process hearing, Tiffany Shine learned that she was being used as the vehicle for the defendants' conspiracy to defame Adam and Jen Olson. She called Lieut. Landsgard and told him to take her name out of his mouth and that what he was relying on was "hearsay." Chris Shine would end up taking sick leave that night "because that's how my gut feels with this whole situation."

It is unclear whether Lieut. Landsgard reported to his superior officer that Tiffany Shine would not corroborate the allegations regarding Olson's mental health prior to the hearing.

During the hearing Chief Venenga asked Olson to defend the baseless allegations regarding September 12. At the end of the hearing, the City attorney asked for a statement from Olson regarding the allegations from September 12, "so we can make a decision based on that." Olson's attorney responded on his behalf via email following the hearing.

Recall that due to the police department's failure to do any actual police work, the only basis on which the individual Defendants could claim that their statements regarding

Olson's mental health were credible was from the "wives club," i.e. Jennifer Olson and Tiffany Shine.  Yet, when faced with evidence that the "wives club" was not going to corroborate the defendants' statements, Chief Venenga couldn't "give any credibility to the wives club."  Absent any other credible evidence as to Olson's mental health, Chief Venenga's statement is tantamount to an admission she had no basis for her allegations regarding the same.

As a result of these defamatory statements about Olson's mental health, he was barred from city property and lost his job.  Ryan Heiar testified that he would not permit Olson to return to work given what had been reported to him by his chief of police.  Deb Hilton, Human Resources Manager for the City of North Liberty, still believes the allegations regarding Olson's mental health to be true.

## LEGAL ISSUES

At the summary judgment stage, the Court dismissed all of Plaintiff's causes of action except for his claim for defamation.  As such, defamation is the only issue at hand.  "The gist of an action for libel or slander is the publication of written or oral statements which tend to injure a person's reputation and good name." *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994).  Here, Adam Olson is claiming the Defendants orally made statements about him, and that those statements were slanderous.  *See, e.g., Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996) (distinguishing between written claims (libel) and spoken claims (slander)).

Plaintiff anticipates the following issues may arise at trial.

1. **Privileges**

Plaintiff anticipates the Defendants will attempt to raise the issue of qualified

privilege with respect their defamatory statements. In its summary judgment ruling, the Court dismissed the Defendants' claims for absolute privilege as "misguided," and so Plaintiff does not anticipate additional argument as to absolute privilege. Doc. 50, Order on Summary judgment, pg. 10, n. 4.

"Qualified privilege is an affirmative defense that must be pleaded and proved." *Kent v. Iowa*, 651 F. Supp.2d 910, (S.D. Iowa 2009) (quoting *Vinson v. Linn-Mar Community School Dist.*, 360 N.W.2d 108, 116 (Iowa 1984). The Court must decide whether a qualified privilege exists. *Jones v. University of Iowa*, 836 N.W.2d 127, 149 (Iowa 2013). However, the question of whether the Defendants abused the qualified privilege is a question for the jury. *Id*.

A qualified privilege will exist when the defendant is able to prove that the alleged defamatory statement "1) was made in good faith, 2) the defendant had an interest to uphold, 3) the scope of the statement was limited to the identified interests, and 4) the statement was published on a proper occasion, in a proper manner, and to proper parties only." *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 78 (Iowa 2001). If a qualified privilege exists, it can be defeated upon a showing that the privilege was abused. *Barreca v. Nickolas*, 683 N.W.2d 111, 117 (Iowa 2004). Abuse occurs upon a showing of "actual malice," which "occurs when a statement is made with knowledge that it is false or with reckless disregard for its truth or falsity." *Id*. at 120 (quoting *Taggert v. Drake University*, 549 N.W.2d 796, 804 (Iowa 1996)).

**2. Spousal communications**

At Defendant Shine's deposition his counsel objected to questions related to conversations between Defendant Shine and his wife, Tiffany Shine, and the witness

subsequently did not answer the questions. The basis for the objection was Iowa Code §622.9, which states:

> **Communications between husband and wife.** Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted.

Defendants have listed Tiffany Shine as a witness. Her anticipated testimony is unknown, however her testimony may involve what she told Defendant Christopher Shine. As the Defendant, the privilege belongs to Christopher Shine, not Tiffany. *See State v. Hastings*, 466 N.W.2d 697, 699 (Iowa 1990). Therefore, a failure of the Defendant to object to testimony from Tiffany Shine involving communications between herself and Defendant Shine should constitute a waiver of the privilege by Christopher Shine.

Respectfully submitted,

*/s/ Ben Arato*
Steven Wandro        AT0008177
Ben Arato            AT00010863
WANDRO & ASSOCIATES, P.C.
2501 Grand Ave. Suite B
Des Moines, IA 50312
Telephone: (515) 281-1475
Facsimile: (515) 281-1474
Email: swandro@2501grand.com
       barato@2501grand.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon each of the attorneys of record of all parties to the above-entitled cause on June 7, 2021 via email.

*/s/ Ben Arato*