IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| ADAM OLSON,<br><br>      Plaintiff,<br><br>vs.<br><br>CITY OF NORTH LIBERTY,<br>DIANE VENENGA, individually,<br>CHRISTOPHER SHINE,<br>individually, and TYSON<br>LANDSGARD, individually,<br><br>      Defendants. | No. 3:18-cv-00102<br><br><br><br>DEFENDANTS' TRIAL BRIEF |

Defendants City of North Liberty, Diane Venenga, Christopher Shine, and Tyson Landsgard submit the following Trial Brief:

The Court is very familiar with the facts of this matter, as set forth in detail in its summary judgment order. (Doc. 50, pp. 1–6). Following the Court's order granting summary judgment on a number of other claims (Doc. 50), Plaintiff Adam Olson's only remaining claim is for defamation. In Iowa, defamation law "embodies the public policy that individuals should be free to enjoy their reputation unimpaired by faults and defamatory attacks." *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998). The gist of an action for libel or slander is the publication of written or oral statements which tend to injure a person's reputation or good name.

**Qualified Privilege**

The law of defamation recognizes certain situations may arise in which a person, in order to protect his own interests or the interests of others, must make statements about another which are libelous but when this happens the statement is said to be privileged meaning no liability attaches to its publication. The initial question of whether a publication was privileged is for the

Court. A qualified privilege applies to publication between employees of the same organization. In order to establish qualified privilege, a defendant must prove:

(1)  The statement was made in good faith,

(2)  the defendant had an interest to uphold,

(3)  the scope of the statement was limited to the identified interest, and

(4)  the statement was published on a proper occasion, in a proper manner, and to proper parties only.

*Theisen v. Covenant Medical Center, Inc.*, 636 N.W.2d 74, 83-84 (Iowa 2001). In order to defeat qualified privileged as a defense to defamation, a plaintiff must prove the defendant acted with knowing or reckless disregard of the truth of the statement. *Barreca v. Nickolas*, 683 N.W.2d 111, 121 (Iowa 2004). The rationale and scope of the privilege is detailed in the Restatement (Second) of Torts:

> An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.
>
> *a. Nature of privilege.* The rule stated in this Section sets forth only the circumstances that make a publication conditionally privileged. Even though the publication is privileged, a particular person cannot avail himself of the privilege if he abuses it (See §§ 599–605A). The privilege may be abused and its protection lost by the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter (see §§ 600–602); by the publication of the defamatory matter for some improper purpose (see § 603); by excessive publication (see § 604); or by the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged. (See § 605A).
>
> *b. Relation of privilege to constitutional requirement of fault as to falsity.* A conditional privilege is one of the methods utilized by the common law for balancing the interest of the defamed person in the protection of his reputation against the interests of the publisher, of third persons and of the public in having the publication take place. The latter interests are not strong enough under the circumstances to create an absolute privilege but they are of sufficient significance to relax the usual standard for liability. Thus the traditional balance at common law had been attained in the past by holding that a person having a

conditional privilege was not subject to the normal strict liability for a defamatory communication but was liable only if he did not believe the statement to be true or lacked reasonable grounds for so believing. This adjustment of the conflicting interests has now been subjected to necessary modification by the recent holding of the United States Supreme Court in *Gertz v. Robert Welch, Inc.*, (1972) 418 U.S. 323, that strict liability in defamation is unconstitutional and that a publisher can be held liable only if he was at fault amounting at least to negligence regarding the falsity of the statement. (See § 580B).

One consequence of this holding is that mere negligence as to falsity, being required for all actions of defamation, is no longer treated as sufficient to constitute abuse of a conditional privilege. Instead, knowledge or reckless disregard as to falsity is necessary for this purpose. (See § 600). . . .

. . . .

*c. The privilege arising out of the rule stated in this Section is not necessary when the defamatory matter is communicated for the purpose of protecting a sufficiently important interest that the publisher and the recipient have in common.* If the defamatory matter is published for this purpose the publication is privileged either under the rule stated in § 594 or that stated in § 595. Under the rule stated in this Section it is not necessary to the existence of the privilege stated that the defamatory matter be published for the protection of the common interest. The rule is based on the fact that one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them. This interest in their common affairs entitles him to information as to how they are conducted, or to information that affects the common interest, even though he is not personally concerned with the information.

Thus a partner is entitled to be told not only of the discharge of an employee by his fellow partner but also of the reasons for his discharge, and the fellow partner is conditionally privileged to state the reason even though it reflects upon the conduct or character of the employee in question. This is true, although the employment is at will, and, therefore, the partner to whom the information is communicated is not in danger of that liability to which he would be subjected if the discharge of the employee were in breach of a contract of employment. In many instances, the common interest makes proper the communication of defamatory matter that has prompted certain action on the part of one of the parties although it has subsequently been discovered that the matter was false.

It is not necessary that the communication be made at an official meeting of the group, or that it take the form of any official action on the part of the group or its representatives. A purely private communication between members of the group is privileged, if it meets the requirements stated in this Section.

Restatement (Second) of Torts § 596 (1977).

The qualified privilege identified in the cases cited above as well as the Restatement (Second) of Torts applies to the communications between Defendants Shine, Landsgard, and Venenga. The City and the individual defendants had an undisputed interest in the information provided by Shine. Plaintiff had already been placed on administrative leave following an internal affairs investigation of his conduct during a felony traffic stop. The next day, Plaintiff was scheduled to appear at a due process hearing to provide his explanation or response to fourteen issues arising from the felony traffic stop as well as ten additional issues relating to his overall job performance. Plaintiff knew his continued employment was in jeopardy.

As a certified law enforcement officer, Sergeant Shine was keenly aware of incidents of workplace violence involving disgruntled or previously terminated employees. Sergeant Shine had personally observed unusual behavior by Plaintiff during the time Plaintiff was on administrative leave. Adding to his concerns were comments attributed to Plaintiff's wife, which expressed her concern about Plaintiff's current emotional stability. Shine's communication of the allegedly defamatory matter was made in good faith on a subject in which he had an interest to another person having a corresponding interest and in a manner and under circumstances fairly warranted by the occasion and interest. Shine's communication was wholly unlike that considered by the Iowa Supreme Court in *Barreca v. Nickolas*, 683 N.W.2d 111 (2004). In that case a Davenport alderman presiding as mayor pro tem at a meeting of the Davenport City Council publicly "repeated an anonymous informant's false allegation that illicit and nefarious activities—involving minors, thongs, and water—were afoot at a local teen dance club." *Id.* at 114. The Court held as a matter of law the alderman's statement was qualifiedly privileged. The Court also stated, "Surveying our precedence, we find that members of subordinate legislative bodies, including city councils, are entitled to a qualified privilege for statements made in the

performance of their official duties 'upon any subject matter pertinent and relevant' to the occasion." After determining the district court correctly held the occasion was qualifiedly privileged it then addressed the question of whether the Defendant had abused the privilege. In *Barreca* the Court also held that to defeat a qualified privilege, a plaintiff must prove the Defendant acted with knowing or reckless disregard of the truth of the statement. *Id.* at 121. There must be sufficient evidence to show the Defendant acted with a knowing or reckless disregard for the truth.

In this case, Shine justifiably believed his statements would likely be important and potentially beneficial to Landsgard and Venenga while the likelihood of injury to Plaintiff, if the statements were false, was relatively small. The Court should determine as a matter of law that the allegedly defamatory statements were communicated only to appropriate recipients and the information would have been reasonably believed by Shine to be of service for protection of their interest.

### Nominal Damages

Because the Court has found certain allegedly defamatory statements meet the threshold of defamation per se, the jury must be presented the option of awarding only nominal damages if Plaintiff fails to prove actual damages caused by the alleged defamation.

> It is well established that at least *nominal damages* are presumed to result from the publication of a libel per se. Whether *actual* damages, in addition to nominal damages, have resulted from the publication of a libel per se depends upon the proof in the case, and the award of such damages is to be determined by the jury under the facts and circumstances shown in the trial.

*Ballinger v. Democrat Co.*, 223 N.W. 375, 376 (Iowa 1929) (emphases in original).

> Nominal damages are awarded when the insignificant character of the defamatory matter, or the plaintiff's bad character, leads the jury to believe that no substantial harm has been done to his reputation, and there is no proof that serious harm has resulted from the defendant's attack upon the plaintiff's character and reputation. They are also awarded when they are the only damages claimed, and the action is

> brought for the purpose of vindicating the plaintiff's character by a verdict of a jury that establishes the falsity of the defamatory matter.

Restatement (Second) of Torts § 620 cmt. a (1977). Iowa law has long recognized the concept of nominal damages, and the Iowa Supreme Court has held that an award of nominal damages should not exceed one dollar. *Graves v. Iowa Lakes Cmty. Coll.*, 639 N.W.2d 22, 28 (Iowa 2002), *overruled on other grounds by Kiesau v. Bantz*, 686 N.W.2d 164 (Iowa 2004). If the Court or jury does not find for Defendants on qualified immunity, only an award of nominal damages is appropriate as Plaintiff's termination from employment was unrelated to the allegedly defamatory statements and Plaintiff has failed to prove any actual damage to his reputation or otherwise.

        PICKENS, BARNES & ABERNATHY

By   /s/ *Bradley J. Kaspar*
    Terry J. Abernathy AT0000380
    Bradley J. Kaspar AT0012308
    1800 First Ave. NE, Suite 200
    P.O. Box 74170
    Cedar Rapids, IA  52407-4170
    PH:  (319) 366-7621
    FAX: (319) 366-3158
    E-MAIL: tabernathy@pbalawfirm.com
                bkaspar@pbalawfirm.com

ATTORNEYS FOR DEFENDANTS

Copy to:

Steven Wandro
Ben Arato
WANDRO AND ASSOCIATES, P.C.
2501 Grand Avenue B
Des Moines, IA 50312

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of this document was served on the 7th day of June, 2021, upon all parties in the above cause by serving the attorneys of record at their respective addresses disclosed on the pleadings. Service was made by:

- ☐ U.S. Mail
- ☐ Hand-Delivery
- ☐ Overnight Carrier
- ☐ Facsimile
- ☒ Other-CM/ECF

*/s/ Stephanie Hinz*